UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DEAN VICKNAIR

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS AND THE
STATE OF LOUISIANA

CIVIL ACTION

NO. 10-CV-551

## RULING ON DEFENDANTS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment by Defendants Louisiana Department of Public Safety and Corrections and the State of Louisiana ("DPS") (doc. 13). Plaintiff Dean Vicknair ("Vicknair") filed on opposition (doc. 17) and Defendants replied (doc. 18). The Court has jurisdiction under 42 U.S.C. § 1331. There is no need for oral argument. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Vicknair worked for DPS in its Information Services Division ("IT") from 1989 until 2004, when he resigned and went to work for the Louisiana Department of Transportation Development ("DOTD"). After Hurricane Katrina the next year, Vicknair was loaned by DOTD back to DPS due to his expertise in Lotus Notes administration. Shortly thereafter, in November of 2005, Vicknair officially transferred back into DPS. (Doc. 13-6 at 2). Vicknair claims this was against his better judgment. (Doc. 17 at 1). The reason his reservation was that

Vicknair, during his first stint at DPS, had testified in a sexual harassment complaint a female co-worker filed against Jeya Selvaratnam ("Selvaratnam"), an officer of some sort in the IT department. Though the parties dispute Vicknair's importance in the probe, DPS allows that Vicknair relayed an offensive remark made by Selvaratnam that led to the complaint, which led to Selvaratnam's suspension. (Doc. 13-6 at 6). Vicknair claims he only agreed to return to DPS upon assurances that Selvaratnam would not become the head of IT. Selvaratnam was in fact made Director of IT. When this happened is not clear from the briefs or the record.

In April of 2009, the Lotus Notes Administrator, Sides, left the agency and Vicknair was transferred to fill the position. There was no change in title; Vicknair remained a classified IT Tech Support Specialist 3, just as Sides had been.

It is this transfer that is the source of this suit. Almost immediately problems arose between Vicknair and his new supervisor, Christopher Artall ("Artall"): at a May 15 performance planning session the two could not agree on the objective measures that would be used to measure Vicknair's performance and a subsequent meeting with Weber (Vicknair's former direct supervisor), Artall, Selvaratnam, and Manager Tara Zeringue ("Zeringue")[1] apparently could not resolve the differences. In June Vicknair made a request to Zeringue to be transferred out from under Artall's supervision. This request was apparently

---

[1] Though it is not clear from his brief, Vicknair seems to claim this disagreement led him to file an internal complaint against Artall for creating a hostile work environment. (Doc. 17 at 3).

2

denied.  On June 15, Vicknair emailed Weber with the same request, which led to another meeting with Selvaratnam deciding not to transfer Vicknair.  On June 18, Vicknair met with Undersecretary Jill Boudreaux,[2] who ultimately decided the next day to transfer Vicknair to the supervision of Keith Crochet ("Crochet").  This physical move occurred approximately one week later.

On August 21, 2009, Vicknair filed an internal EEOC complaint alleging retaliation.  He claimed Selvaratnam transferred him to Artall's supervision, which he claimed Selvaratnam knew would be a hostile work environment for Vicknair.  The reason for this, Vicknair claimed, was because of his role in the 2004 sexual harassment complaint.  During the investigation of this complaint, the investigator became suspicious about some of the information Vicknair provided in support.  An investigation of this led to Vicknair's admission that he had accessed certain email accounts and databases for impermissible purposes.  He was suspended with pay on November 5 and later recommended for termination on December 21.  He retired on December 26, 2009.[3]  After his retirement he filed an EEOC claim, alleging retaliation.  (Doc. 1 at 10).  He claims he amended the claim to add constructive discharge.  (Doc. 17 at 3).  After receiving a right to sue letter, he filed this suit, alleging retaliation for his complaints against Artall and

---

[2] Though the parties are not clear about the hierarchy, the Court infers the following structure, in descending order of authority over Vicknair: Bourdreaux, Zeringue, Selvaratnam, and Artall.  Weber, Vicknair's former supervisor, appears to have held the same rank as Artall.
[3] The Court will refer to these two events together as "suspension/termination".

3

Selvaratnam—as well as his role in Selvaratnam's 2004 harassment investigation—and constructive discharge. Defendants then filed this motion.

## **STANDARD OF REVIEW**

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Although summary judgment is not generally favored in claims of employment discrimination, it is nonetheless proper when there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law. *Fierros v. Texas Dept. of Health,* 274 F.3d 189, 190-91 (5th Cir. 2001). The Court's role in this setting is not to weigh the evidence or make credibility determinations, as these are the purview of the jury, not the judge. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## **DISCUSSION**

DPS breaks the retaliation claims into two: retaliation for Vicknair's reassignment and also for his suspension/termionation, tracking the language of the EEOC right to sue letter. Vicknair addresses them together, with constructive discharge being his adverse employment action. Vicknair points to no cases—and the Court can find none through its own research—where constructive discharge can be an adverse employment action in a retaliation claim. The Court finds that the adverse employment activity was the suspension/termination of Vicknair. Whether that suspension/termination, along with the other instances of hostile work environment, constitute constructive discharge will be addressed in that claim below.

Retaliation Claims

To make a prima facie showing of retaliation under Title VII, a plaintiff must show (1) that he was engaged in a Title VII protected activity; (2) that he suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). The Plaintiff's prima facie showing of retaliation creates an inference of impermissible retaliatory motive. *Greene v. DaimlerChrysler Services of North America*, 128 Fed. Appx. 353, 356 (5th Cir. 2005). At this point the burden would shift to the defendant to produce a legitimate, non-retaliatory reason for the adverse employment action. If it does, the burden shifts back to the plaintiff to show this reason is merely a pretext for

5

retaliation, which it does by showing that the adverse action would not have occurred but for the protected activity. *Id.*

As to Vicknair's retaliation claim relating to his reassignment, DPS acknowledges that Vicknair was engaged in protected activities when he participated in the 2004 investigation of Selvaratnam. Therefore the Court finds the first element is satisfied. DPS contests the second element, claiming that being reassigned to Artall's supervision is not an adverse employment action. (Doc. 13-6 at 10-11). Vicknair does not specifically discuss whether reassignment can be an adverse employment action. The Court will consider this claim abandoned. The Court agrees with DPS that a retaliation claim based solely on his reassignment would likely fail as it is unlikely a lateral transfer with no change in pay, job title, or duties, could pass the "objectively worse" requirement for a transfer to be a demotion that constitutes an adverse employment action.[4] See *Greene* 128 Fed Appx. at 357.

As to the retaliation claim based on his suspension, DPS concedes the first two elements but contests the third, that there is the causal link between Vicknair's protected activities and his suspension. Vicknair claims that the only reason DPS found out about his allegedly improper use of the email system was through its investigation of his internal EEOC claim. Had there been no EEOC

---

[4] In the Fifth Circuit, only "ultimate employment decisions qualify as the adverse employment actions necessary to establish a prima facie case of retaliation." *Greene*, 128 Fed. Appx. at 357, citing *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir. 1997). Although generally transfers do not constitute such ultimate employment decisions, a demotion can. *Id.*

6

Case 3:10-cv-00551-JJB-DLD    Document 19    02/17/12    Page 6 of 9

claim, there would have been no investigation and he never would have been suspended. (Doc. 17 at 15-17). DPS argues Vicknair cannot show that but-for his EEOC complaint he would not have been suspended (doc. 13-6 at 13) and that his suspension was brought about by the suspicions that were raised during the investigation of the EEOC complaint (doc. 18 at 6-7).

The Court notes that the standard for showing a causal link is not the same as same as the ultimate issue of whether the defendant took an adverse employment action because of plaintiff's protected activity. *Martin v. J.A.M. Distributing Co.*, 674 F. Supp. 2d 822, 843-44 (E.D. Tex 2009) citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). At this stage, the standard for establishing a causal link is much less stringent. *Id.* at 844 (citations omitted). To establish a causal link, the plaintiff does not need to show that his protected activity was the only reason for the adverse employment action, only that the action was based in part on knowledge of the activity. *Id.* (citations omitted).

Under this less stringent standard, the Court finds a causal link exists between Vicknair's EEOC complaint against Selvaratnam and his suspension. DPS discovered Vicknair's unauthorized use of the email system only because it was investigating his internal EEOC complaint. It would be impossible for DPS not to have known about the complaint. The fact that Selvaratnam may not have ordered the suspension is irrelevant. The employer is DPS, DPS is the one

7

being sued. Vicknair has made his prima facie showing of retaliation stemming from his suspension.

The burden now shifts to Defendant to show a legitimate, non-retaliatory reason for the suspension/termination. DPS does not do so in either its brief or its reply. While it repeats the alleged violations he committed, as well as his admissions, DPS does not provide a reason. As DPS points to no evidence that such actions violated policy or constituted firing offenses, the Court finds a genuine dispute of material fact exists as to whether it had a legitimate, nonretaliatory reason for suspending/terminating Vicknair. Therefore, summary judgment is denied on this claim.

Constructive Discharge

Plaintiff's next claim is that he was constructively discharged through the actions of DPS. DPS claims that since this was not in the original EEOC complaint, Plaintiff is barred from bringing it here. As the Court finds it without merit, it pretermits the procedural question.

To succeed on a claim of constructive discharge, a plaintiff must show his employer made working conditions "so intolerable that a reasonable employee would feel compelled to resign." *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 771 (5th Cir. 2001). Factors courts consider include: demotion; reduction in salary; reduction in job responsibilities; reassignment to menial or

degrading work; badgering, harassment, or humiliation by the employer calculated to encourage resignation; or offers of early retirement that would make the employee worse off whether the offer was accepted or not. *Id.* at 771-72.

While Vicknair complains of poor treatment at work, he did not quit because of it. He quit after he received a recommendation of termination letter. In other words, he quit in order to avoid getting fired. Had he quit before his suspension/termination, he might have a claim. However, as he quit only when it was clear he would be fired, this is not the sort of thing remedied through a constructive discharge claim. Summary judgment on this claim is granted.

## CONCLUSION

For the reasons issued above, Defendant's motion (doc. 13) is granted in part and denied in part. The retaliation claim related to Plaintiff's reassignment is dismissed, as is his constructive discharge claim. However, Plaintiff's retaliation claim related to his suspension will move forward.

Signed in Baton Rouge, Louisiana, on February 16, 2012.

_____
JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA